IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

BOBBY G. HEARD )
  ) Case No: 1:03-CV-321
v. ) COLLIER/CARTER
  )
JO ANNE B. BARNHARDT, )
    Commissioner of Social Security )

## REPORT AND RECOMMENDATION

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner denying the plaintiff a period of disability, disability insurance benefits, and supplemental security income under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1382.

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation regarding the disposition of the plaintiff's Motion for Judgment on the Pleadings (Court File No. 12), defendant's Motion for Summary Judgment (Court File No. 18) and plaintiff's Response to the Commissioner's Cross-Motion for Summary Judgment (Court File No. 20).

For the reasons stated herein, I RECOMMEND the decision of the Commissioner be AFFIRMED.

### Plaintiff's Age, Education, and Past Work Experience

The plaintiff was a 62-year-old individual with a birth date of June 4, 1940. He was 58 at the time of his alleged onset. The plaintiff completed a tenth grade education and welding training. His past work experience includes employment as a mechanic inspector, heavy and skilled, and a bus inspector, medium and skilled. The ALJ found these classifications consistent

with those in the *Dictionary of Occupational Titles*. The plaintiff alleges that he became disabled on September 14, 1998, due to his visual impairment that rendered him unable to perform his job as an inspector (Tr. 110).

Administrative Proceedings

Plaintiff applied for a period of disability and Disability Insurance Benefits (DIB) on two occasions. Plaintiff first applied for DIB on April 9, 1997. This application was denied by an ALJ on September 13, 1998 (Tr. 68-76). In that decision, ALJ Joseph V. Barker found that plaintiff could perform medium work that entailed no fine visual acuity and no work involving heights, hazards, or climbing ladders, ropes or scaffolding (Tr. 74).[1] Plaintiff did not seek further review of this decision, and the decision became the final decision of the Commissioner. The plaintiff then filed his application for disability, disability insurance benefits, and supplemental security income disability benefits on February 19, 1999, for disability commencing September 14, 1998. The application was denied initially, upon reconsideration, and in an unfavorable decision issued by ALJ John F. Proctor on September 13, 2000. The plaintiff appealed his claim to the Commissioner's Appeals Council, and the Appeals Council issued a remand on November 6, 2001, for two reasons: there was no valid vocational evidence in the record to support the ALJ's findings and the tape from the April 20, 2000, hearing was missing (Tr. 58). Pursuant to the Appeals Council Order, a supplemental hearing was held on June 19, 2002. The ALJ issued a denial on June 22, 2002.

---

[1]Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567(c). A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday. Social Security Ruling (SSR) 83-10. Medium work requires the use of the arms and hands to grasp, hold and turn objects. SSR 83-10.

In his decision dated June 22, 2002, ALJ John F. Proctor cited the Sixth Circuit's decision of *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997), which found that, in the absence of a change in claimant's condition, an ALJ adjudicating a subsequent period of time is bound by a prior ALJ's finding (Tr. 21). Relying on *Drummond*, ALJ Proctor considered the record evidence, including plaintiff's administrative testimony, and concluded that the evidence did not show that plaintiff's condition had worsened since ALJ Barker's September 1998 decision (Tr. 25). In particular, ALJ Proctor found that plaintiff had the ability to perform medium work that did not entail fine visual acuity or working at heights (Tr. 25). On the basis of the record as a whole, I conclude ALJ Proctor's finding that plaintiff's condition had not worsened and that he could perform a range of medium work is supported by substantial evidence. ALJ Proctor noted that plaintiff's glaucoma was stable and Dr. Lawwill, who performed an ophthalmologic examination, opined that plaintiff could do gross manual work, read with a magnifying glass, but could not drive. ALJ Proctor considered plaintiff's other impairments, including his complaints of arthritis and joint pain in his hand, knee and shoulder. ALJ Proctor specifically cited record evidence that showed that plaintiff's hand pain had resolved and an x-ray of the left knee revealed only slight degenerative changes. ALJ Proctor concluded that plaintiff's left knee impairment would preclude him from performing heavy work, but not medium work. ALJ Proctor then relied on vocational expert testimony to find that plaintiff was not disabled because he could still perform a significant number of jobs in the national economy given his credible work-related limitations, age, education, and past work history (Tr. 25-26).

The plaintiff appealed to the Appeals Council and the Appeals Council issued a letter

3

Case 1:03-cv-00321 Document 21 Filed 08/08/05 Page 3 of 17 PageID #: 11

dated July 18, 2003, declining to review the case, thus the decision of the ALJ became the final administrative action in the case.

## Standard of Review - Findings of the ALJ

Disability is defined as the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §423(d)(1)(A). The burden of proof in a claim for Social Security benefits is upon the claimant to show disability. *Barnes v. Secretary, Health and Human Servs.*, 743 F.2d 448, 449 (6th Cir. 1984); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978). Once, however, the plaintiff makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience. *Richardson v. Secretary, Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); *Landsaw v. Secretary, Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to

4

administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Secretary, Health and Human Servs.*, 790 F.2d 450 n. 4 (6th Cir. 1986).

After consideration of the entire record, the ALJ made the following findings:

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through December 31, 2001.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 C.F.R. § 404.1520(b).
>
> 4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.
>
> 5. I find the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.
>
> 6. I have carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 C.F.R. § 404.1527).
>
> 7. The claimant has the residual functional capacity to perform medium work not requiring fine visual acuity or work around heights.
>
> 8. The claimant is unable to perform any of his past relevant work (20 C.F.R. § 404.1565).
>
> 9. The claimant is now an "individual closely approaching retirement age" (20 C.F.R. § 404.1563). Prior to attainment of age 60 in June 2000, he was considered to be of advanced age.

5

10. The claimant has a "limited" education (20 C.F.R. § 404.1564).

11. The claimant has transferable skills from past relevant work but transferability of skills is not an issue in this case due to his visual impairment (20 C.F.R. § 404.1568).

12. The claimant has the residual functional capacity to perform a significant range of medium work (20 C.F.R. § 416.967).

13. Although the claimant's exertional limitations do not allow him to perform the full range of medium work, using Medical-Vocational Rule 203.04, (after attainment of age 60) and Rule 203.12 (prior to attainment of age 60), as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as cashier, with 600 jobs regionally and 140,000 nationally; stock handler with 3400 jobs regionally and 760,000 nationally; and hand packer with 550 jobs regionally and 102,000 nationally.

14. The claimant was not under "disability," as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. § 404.1520(f).

(Tr. 26, 27).

## Issues Presented

Plaintiff raises the following issues:

1) The Commissioner should be required to abide by the terms of the prior remand order, which provided that Mr. Heard would receive a *de novo* hearing if the Commissioner was unable to locate his file within 90 days of the order.

2) The Commissioner failed to fully and fairly develop the record by not obtaining a consultative examination.

3) New and material evidence justifies a remand pursuant to sentence six.

Relevant Facts

Medical Evidence

The plaintiff asserts he is unable to work due to a combination of medical conditions: visual impairment, which led directly to his leaving his past relevant work as a mechanic-inspector when he could no longer pass the vision portion of his physical, and various physical ailments causing joint pain and fatigue. Given his age (over 55 at all relevant times), education ("limited") and inability to perform past work or to utilize any transferable skills, Grid Rule 202.02 requires only that Mr. Heard be limited to light exertion in order to be found disabled. However, the ALJ found him capable of a reduced range of medium exertion.

The plaintiff was diagnosed with glaucoma in 1988 after complaining of blurry vision and floaters and has seen Dr. Charles Kirby since that time for this problem (Tr. 170-234). Dr. Kirby indicated in August of 1988 that the plaintiff suffered from left superior oblique palsy, ocular hypertension and inactive toxoplasmosis choroidal retinitis (Tr. 224). He also indicated during this visit that if the plaintiff's interocular pressure was still elevated at the next visit, he would begin glaucoma drops (Tr. 223). His subsequent notes indicate that the plaintiff suffered from chronic open-angle glaucoma and bilateral chorioretinal scars (Tr. 197). In August of 1996 he stated that the plaintiff's best corrected vision was 20/60+ bilaterally (Tr. 197). In November of 1996 he noted that his best corrected vision was 20/40 bilaterally (Tr. 196). He also noted the plaintiff's report of blurry vision (Tr. 310, 312, 232). In December of 1996 he indicated that the plaintiff was permanently disabled from his job as a bus inspector since his vision was not good enough to pass the physical exam required by his employer (Tr. 324-325). Dr. Kirby indicated in October 1998 that plaintiff's condition of glaucoma was stable and reported no change in his

7

condition (Tr. 181)

A consultative examiner, Dr. Stewart Lawwill, evaluated the plaintiff's visual impairment on two occasions. He first examined the plaintiff on May 27, 1997, and reported the plaintiff's glaucoma and retinal scars. Dr. Lawwill noted he could not be totally confident in plaintiff's subjective responses (Tr. 294). He also examined the plaintiff on June 26, 2000 (Tr 239-240). After the second visit, he stated that the plaintiff has a history of glaucoma and has old retinal scars which decrease his vision. Interocular pressures were within normal limits (Tr. 239). Dr. Lawwill concluded that "[t]his man can get around and do gross manual work but can not drive. He can read with a magnifying glass" (Tr. 239).

Dr. Abimola Adewale also reported the plaintiff's glaucoma in 1999 (Tr. 148). She noted pain in his left hand in May of 2000 (Tr. 236). Dr. Adewale noted that plaintiff had experienced no trauma that caused the hand pain; he reported no clinical abnormalities on examination of the hand and notes a "strong" hand grip. She indicated that plaintiff's hand pain appeared to be resolving with his "home remedy" (Tr. 236).

The record reflects that the plaintiff complained of a different joint pain in 2000 in his right knee (Tr. 67). An x-ray of plaintiff's right knee in August 2000 showed "slight" degenerative changes with well-maintained joint spacing and no other joint abnormality (Tr. 67).

In addition to his glaucoma and joint pain, the plaintiff is limited by his hernias as well. He was treated by Dr. William Buchner in February of 1999 and an exam revealed bilateral injunal hernias but the plaintiff has refused surgery (Tr. 151-153).

Two non-examining file reviewers completed physical residual functional capacity assessments. The first of these was issued on March 23, 1999, and the second was issued on July

16, 1999 (Tr. 154-161, 162-169). Both assessments concluded that the plaintiff has no restrictions (Tr. 154-161, 162-169).

Evidence Submitted after the June 22, 2002, Hearing

Following the ALJ's decision on June 22, 2002, but prior to the Appeals Council letter dated July 18, 2003, declining to review the case, the plaintiff obtained and submitted additional evidence from Dr. Arrowsmith (Tr. 331-335). Plaintiff contends Dr. Arrowsmith's findings support his allegations of fatigue as the result of thrombocytopenia. Plaintiff submitted this additional evidence to the Appeals Council which consisted of progress notes from Edward R. Arrowsmith, M.D. (Tr. 331-35). On May 3, 2002, Dr. Arrowsmith saw plaintiff for thrombocytopenia (decrease number of blood platelets) (Tr. 333). Dr. Arrowsmith noted that plaintiff had "very" mild thrombocytopenia (Tr. 334). Dr. Arrowsmith indicated that he would see plaintiff again in several months and, because his platelets were in a satisfactory range, he did not feel that a bone marrow biopsy was necessary (Tr. 335).

Three months later, on August 5, 2002, plaintiff returned to Dr. Arrowsmith for a follow-up examination (Tr. 331-32). Dr. Arrowsmith indicated that plaintiff's thrombocytopenia was stable, he would treat plaintiff conservatively, and he would see him again in six months (Tr. 332).

Vocational Expert Testimony

James Friedlob, a vocational expert, testified at the administrative hearing (Tr. 44). The vocational expert characterized plaintiff's past work as a mechanic as heavy, skilled work, and his past work as a bus inspector as medium, skilled work (Tr. 44). The ALJ asked the vocational

9

expert to consider a hypothetical individual with plaintiff's vocational profile and who could perform a range of medium work (Tr. 45). The vocational expert testified that the hypothetical individual could perform work as a cashier (600 jobs), stock handler (3,400 jobs), and hand packer (550 jobs) (Tr. 45). The vocational expert testified that the plaintiff's past work was heavy work and skilled and medium work and skilled (Tr. 44). He indicated that it would not be transferable below medium (Tr. 45). He stated that there would be some medium level jobs that did not require fine visual acuity the plaintiff could perform (Tr. 45). He also indicated that if the plaintiff were limited to lifting no more than twenty pounds as he testified, then he would be limited to light work (Tr. 46).

<u>Hearing testimony</u>

Prior to plaintiff's testimony at his most recent hearing, his representative noted to the ALJ that she had "been unsuccessful in obtaining treating physician office notes," and that as a result "there is a gap there, but he is getting treated" (Tr. 36-37).

Plaintiff testified that he stopped working in 1996 because he developed glaucoma and could no longer pass the required physical (Tr. 38). In addition to his glaucoma, he explained that he has arthritis and joint pain in his knee, hand and shoulder (Tr. 39). He told the ALJ that he takes Celebrex for his arthritis (Tr. 39). The plaintiff also explained that he suffers from fatigue and was told that he has low platelets (Tr. 39). He testified that he can walk about a block and can stand for about thirty minutes (Tr. 39). After sitting for a while his left knee will pop and give out (Tr. 41). The plaintiff stated that the most he can lift is twenty pounds and that he exercises at times with barbells that are less than twenty pounds (Tr. 41). He has to read with a magnifying glass and eyeglasses and drives very little because of his vision (Tr. 42). He

10

spends about two hours napping during the day. Sometimes he washes the dishes, but does not do laundry or yard work (Tr. 43). He explained that he still has hernias and they flare up if he does any heavy lifting (Tr. 44).

Analysis

1) Should the Commissioner be required to abide by the terms of the prior remand order, which provided that Mr. Heard would receive a *de novo* hearing if the Commissioner was unable to locate his file within 90 days of the order?

Plaintiff argues that this Court should strike the Commissioner's answer because the Commissioner violated the Court's remand order. Initially, the parties agreed that the case should be remanded because plaintiff's claims file could not be located. The parties agreed that if the Commissioner could not locate the file within 90 days from the date of the remand order the case would be assigned to an ALJ who would reconstruct the administrative record, hold a *de novo* hearing, and issue a new decision. The Court entered an order on December 12, 2003. On July 23, 2004, more than 90 days later, the Commissioner filed her answer and transcript, which had been located. Because the Commissioner located the file, the Agency did not have to reconstruct the file. Six months after filing the answer and transcript, plaintiff now argues that the Court should strike the Commissioner's answer because this case was not assigned to an ALJ for a *de novo* administrative hearing and a new decision. *See* Plaintiff's Br. at 6-7. Plaintiff cites cases providing that it is the duty of the Hearing Examiner after remand by the District Court to comply with the mandate of the court, *Mefford v. Gardner,* 383 F.2d 748 (6th Cir. 1967), and *Willliams v. Chater,* 915 F.Supp. 954, 958 (N.D. Ind. 1996). However, I do not conclude that the filing of this transcript, even though it was filed some four and one half months after the time set by the court, is a violation of the mandate rule.

11

Although the Agency filed the transcript with the Court more than 90 days after the order, I agree with the Commissioner that this was the most expeditious way to cure the problem in this case. The interests for the Agency not to have to go through more proceedings and for plaintiff not to wait even longer for a new hearing and decision were best served by filing the transcript. I accept the assertion of the Commissioner that the filing of the transcript should not be construed to suggest that the Commissioner decided not to accept the Court's order. The Commissioner notes in her memorandum, "if the file could not have been found, the Commissioner would have had to take steps to cure the problem." Further, the wording of the remand order itself is instructive. In that order the Court expresses the purpose of the order as well as the steps to be taken:

> "The purpose of this remand is to allow the Commissioner additional time to search for the claims file of the administrative proceedings. If the Commissioner cannot locate the claim file within 90 days from the date this Order is entered, the case will be assigned to an administrative law judge who will reconstruct the administrative record, hold a *de novo* hearing and issue a new decision." (Court File No. 2).

The purpose of the remand was to allow the Commissioner time to locate the file. The order did not specify any particular time frame within which the Commissioner had to assign the case to a new ALJ and reconstruct the administrative record. It appears that the transcript and record was located, although some months after the expiration of the 90 days provided in the order. Nevertheless, once the record was found, the most expeditious action was to file that transcript. This avoids the necessity of another hearing and accomplishes the apparent goal of the order, to provide a prompt resolution of the case.

Because the interests of both parties were best served by proceeding with the case, and

12

plaintiff has not pointed to any harm or prejudice that has resulted with the filing of this answer and transcript, I recommend the Court reject plaintiff's argument that remand of this case to the Agency for a *de novo* hearing is required.

2) Did the Commissioner Fail to Fully and Fairly Develop the Record by not Obtaining a Consultative Examination?

Plaintiff was represented by a non-lawyer representative. While the ALJ does have a duty to develop the record, especially in a case of an unrepresented claimant, it is the plaintiff who has the best knowledge of his condition and who is in the best position to provide the ALJ with all the necessary documentation. *See Bowen v. Yuckert*, 482 U.S. 127, 146, n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so"). After a review of the record evidence, it is within the province of the ALJ to decide when there is enough information. *See* 20 C.F.R. § 404.1512(e) (if the evidence is not sufficient, the agency asks for additional information). In this case, I conclude the record was sufficiently complete for the ALJ to reach a reasoned decision.

Evidence before the ALJ included a consultative examination by Dr. Stewart Lawwill who evaluated the plaintiff's visual impairment on two occasions. He examined the plaintiff on May 27, 1997, and reported the plaintiff's glaucoma and retinal scars. He also examined the plaintiff on June 26, 2000. After the second visit, he stated that the plaintiff had a history of glaucoma and has old retinal scars which decrease his vision. Dr. Lawwill concluded that "[t]his man can get around and do gross manual work but can not drive. He can read with a magnifying glass."

Dr. Abimola Adewale also reported the plaintiff's glaucoma in 1999 and noted pain in his

13

left hand in May of 2000. Dr. Adewale noted that plaintiff had experienced no trauma that caused the hand pain, had a "strong" hand grip, and reported no clinical abnormalities on examination of the hand. She further indicated plaintiff's hand pain appeared to be resolving with his "home remedy." The record also reflected that the plaintiff complained of a different joint pain in 2000 in his right knee. However, an x-ray of plaintiff's right knee in August 2000 showed "slight" degenerative changes with well-maintained joint spacing and no other joint abnormality.

In addition to his glaucoma and joint pain, the plaintiff was limited by his hernias. He was treated by Dr. William Buchner in February of 1999 and an exam revealed bilateral injunal hernias but the plaintiff has refused surgery.

Finally, the record included two non-examining file reviewers who completed physical residual functional capacity assessments. Both assessments concluded that the plaintiff has no restrictions.

In summary, the record contained treatment notes from plaintiff's treating physicians; objective test results; results of a consultative examination; and reports from state reviewing agents. Plaintiff argues that the record evidence was "scant" regarding plaintiff's physical impairments of joint pain in the hand, knee, and shoulder and his fatigue. Contrary to plaintiff's argument, I conclude the ALJ did not abuse his discretion when he did not obtain a consultative examination because the record contained sufficient evidence for the ALJ to make a proper determination on the issue of disability. *See Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) *citing Landsaw v. Sec'y of Health & Human Services*, 803 F.2d 211, 214 (6th Cir. 1986) ("[T]he regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant

him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination"). Although plaintiff testified at the hearing that he experienced joint pain and arthritis of the hand, knee, and shoulder, the ALJ properly pointed out that the objective medical evidence did not support plaintiff's testimony (Tr. 24). Indeed, the ALJ noted that the record contained only a few progress notes documenting plaintiff's hand pain. As stated above, in those progress notes, Dr. Adewale noted that plaintiff had experienced no trauma that caused the hand pain, reported no remarkable findings on examination of the hand including a "strong" hand grip, and indicated that plaintiff's hand pain appeared to be resolving with his "home remedy." With regard to plaintiff's complaints of knee pain, the ALJ pointed out that an x-ray of plaintiff's knee showed only "slight" deterioration and no joint abnormalities (Tr. 67). To the extent plaintiff had limitations resulting from his knee impairment, the ALJ accommodated them by finding that plaintiff was not capable of performing heavy work (Tr. 24). Because the record evidence contained sufficient evidence to make a determination on the issue of disability, the ALJ did not abuse his discretion by not obtaining a consultative examination. I therefore recommend the plaintiff's argument, that the ALJ failed in his duty to develop the record, be rejected.

3)      Does New and Material Evidence Justify a Remand Pursuant to Sentence Six?

Plaintiff requests that the Court remand his case to the Agency pursuant to sentence six of § 205(g) of the Act, 42 U.S.C. § 405(g), based on the evidence that he submitted to the Appeals Council. *See* Plaintiff's Br. at 9-12. Evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review. *See Foster*, 279 F.3d at 357. Rather, the Court may only consider this additional evidence to determine whether remand is appropriate pursuant to sentence six of § 205(g) of the

Act, 42 U.S.C. § 405(g). *See Foster*, 279 F.3d at 357. Remand is only appropriate upon an affirmative showing that the subject evidence is new and material and that good cause exists for the failure to present the subject evidence to the ALJ. *Id.*

Plaintiff argues that the additional evidence is material because it related to plaintiff's allegation that he experienced fatigue. *See* Plaintiff's Br. at 12. To establish the materiality prong under sentence six, plaintiff must show a reasonable probability that the ALJ would have reached a different conclusion on the disability claim had he been presented with the subject evidence. *See Foster*, 279 F.3d at 357. I agree with the Commissioner that the additional evidence does not satisfy the materiality prong for a sentence six remand.

In his decision, ALJ Proctor indicated that plaintiff's testimony regarding his fatigue and blood disorder was not fully credible because the record was devoid of evidence to support plaintiff's statements (Tr. 24). While plaintiff does not dispute the ALJ's characterization of the record evidence that was before the ALJ, he now argues that the additional evidence submitted to the Appeals Council undermines the ALJ's statement because the additional evidence showed that Dr. Arrowsmith diagnosed plaintiff with thrombocytopenia, a disorder where an individual does not have sufficient platelets in the blood. A diagnosis, however, by itself, does not establish the severity of the impairment, and does not necessarily support plaintiff's allegations of a disabling impairment. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (a diagnosis says little about the severity of the condition). In this case, although Dr. Arrowsmith diagnosed thrombocytopenia, he indicated that plaintiff's condition was "very mild," plaintiff's platelet count was in the satisfactory range, his condition was stable, and he wanted to see plaintiff every six months (Tr. 331-35). Because the condition was referred to as "very mild" and "stable," I

16

conclude there is no reasonable probability that the additional evidence would have changed the ALJ's decision. Therefore, plaintiff has failed to establish the materiality prong for a sentence six remand under 42 U.S.C. § 405(g) of the Act and this Court should not remand this case for consideration of plaintiff's additional evidence.

## Conclusion

For the reasons stated herein, I RECOMMEND that the Commissioner's decision be AFFIRMED.

I further RECOMMEND the defendant's motion for summary judgment (Court File No. 18) be GRANTED; the plaintiff's motion for judgment on the pleadings (Court File No. 12) be DENIED; and the case be DISMISSED[2].

                                        s/William B. Mitchell Carter
                                        UNITED STATES MAGISTRATE JUDGE

---

[2]Any objections to this Report and Recommendation must be served and filed within ten (10 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).